| | |
|---|---|
| Mary M. Zapata, Individually and as Administrator § of the Estate of Jaime J. Zapata, Amador Zapata, Jr.,§ and Victor Avila, Jr. § § v. § § The United States of America; Manuel Barba; § Otilio Osorio; Ranferi Osorio; Kelvin Morrison; § Blandon Derrick Shaffer; Robert Riendfliesh; § JJ's Pawn Shop, Inc.; Off-Duty Enterprises, Inc.; § Unknown FFL Dealer; BAE Systems, Inc.; § Unknown Vehicle Manufacturer/Outfitter; § Department of Justice; Department of Homeland § Security; Kenneth Melson; William D. Newell; § Hector Tarango; David Voth; Lanny Breuer; § Luis Alvarez; Juan Gelista; Jere T. Miles; § Anthony Salisbury; Raul O. Aguilar; § and John and Jane Doe(s) § | Civil Action No.1:13-cv-00022 |

---

## PLAINTIFFS' THIRD AMENDED COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COME, Mary M. Zapata, Individually and as Administrator of the Estate of Jaime J. Zapata, Amador Zapata, Jr. and Victor Avila, Jr., Plaintiffs, and complain of Defendants, The United States of America; Manuel Barba; Otilio Osorio; Ranferi Osorio; Kelvin Morrison; Blandon Derrick Shaffer; Robert Riendfliesh; JJ's Pawn Shop, Inc.; Off-Duty Enterprises, Inc.; Unknown FFL; BAE Systems, Inc.; Unknown Vehicle Manufacturer/Outfitter; Department of Justice; Department of Homeland Security; Kenneth Melson; William D. Newell; Hector Tarango; David Voth; Lanny Breuer; Luis Alvarez; Juan Gelista; Jere T. Miles; Anthony Salisbury; Raul O. Aguilar; and John and/or Jane Doe(s) directly responsible for decisions made with regards to gunrunning operations and the John and/or Jane Doe(s) straw purchasers not yet identified and would respectfully show the Court as follows:

# I. PARTIES

1. Plaintiff Mary M. Zapata is an individual and Administrator of the Estate of Jaime J. Zapata, duly appointed by the State of Texas on September 14, 2011, who permanently resides in Brownsville, Cameron County, Texas.

2. Plaintiff Amador Zapata, Jr. is an individual who permanently resides in Brownsville, Cameron County, Texas.

3. Plaintiff Victor Avila, Jr. is an individual who temporarily resides in the United States.

4. Defendant Manuel Barba is an individual and federal prisoner who resides in Houston, Harris County, Texas. Defendant may be served with process at Federal Detention Center - Houston, 1200 Texas Avenue, Houston, Texas 77002. Defendant Barba previously resided in Baytown, Harris County, Texas.

5. Defendant Otilio Osorio is an individual and federal prisoner who resides in Seagoville, Dallas County, Texas. Defendant may be served with process at Federal Correctional Institution - Seagoville, 2113 North Highway 175, Seagoville, Texas 75159. Defendant Osorio previously resided in Lancaster, Dallas County, Texas.

6. Defendant Ranferi Osorio is an individual and federal prisoner who resides in Texarkana, Bowie County, Texas. Defendant may be served with process at Federal Correctional Institution – Texarkana, P.O. Box 7000, Texarkana, Texas 75505.

7. Defendant Kelvin Morrison is an individual and federal prisoner who resides in Beaumont, Jefferson County, Texas. Defendant may be served with process at Federal Correctional Institution – Beaumont, P.O. Box 26020, Beaumont, Texas 77720.

8. Defendant Blandon Derrick Shaffer is an individual who resides in Baytown, Harris County, Texas. Defendant may be served with process at his residence, 509 Lloyd Ln., Baytown, Texas 77521-4258, or wherever he may be found.

9. Defendant Robert Riendfliesh is an individual who resides in Dayton, Liberty County, Texas. Defendant may be served with process at his residence, 111 Rosewood Dr., Dayton, Texas 77535, or wherever he may be found.

10. Defendant JJ's Pawn Shop, Inc. is a Texas corporation that is located in Beaumont, Jefferson County, Texas. Defendant may be served with process by serving its registered agent, James P. Hedrick, Jr., at 5640 College Street, Beaumont, Texas 77707.

11. Defendant Off-Duty Enterprises, Inc. is a Delaware corporation authorized to conduct business in Texas, and doing business as Off-Duty Armory in Burleson, Johnson County, Texas. Defendant may be served with process by serving its registered agent, James F. Terrill, at 501 Hilltop Place, Joshua, Texas 76058.

12. Defendant Unknown FFL Dealer is a fictitiously-named defendant whose true identity is presently unknown to Plaintiffs. Plaintiffs will amend this compliant when Unknown FFL Dealer becomes known.

13. Defendant BAE Systems, Inc. is a Delaware corporation authorized to conduct business in Texas, and doing business in Sealy, Austin County, Texas. Defendant may be served with process by serving its registered agent, CT Corporation, at 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

14. Defendant Unknown Vehicle Manufacturer/Outfitter is a fictitiously-named defendant whose true identity is presently unknown to Plaintiffs. Plaintiffs will amend this complaint when Unknown Vehicle Manufacturer/Outfitter becomes known.

15. Defendant United States of America may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002, and by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

16. Defendant Department of Justice is an agency of the United States of America. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002, and by sending a copy of the summons and of the complaint by registered or certified mail to the Department of Justice, at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

17. Defendant Department of Homeland Security is an agency of the United States of America. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to the Department of Homeland Security, at Secretary Janet Napolitano, Department of Homeland Security, U.S. Department of Homeland Security, Washington, DC 20528.

18. Defendant Kenneth Melson, former Deputy Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives was an officer of the United States of America on the date of incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to 99 New York Avenue, NE, Washington, DC 20226.

19. Defendant William D. Newell, former Special Agent in Charge of Phoenix Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives was an employee of the United States of America on the date of incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001;  and by sending a copy of the summons and of the complaint by registered or certified mail to 99 New York Avenue, NE, Washington, DC 20226.

20. Defendant Hector Tarango, ATF Agent, authored the Report of Investigation in Zapata incident.  Special Agent in Dallas Filed Division, Field Office Dallas III is an employee of the United States of America. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950

Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to 99 New York Avenue, NE, Washington, DC 20226.

21. Defendant David Voth, former supervisor of the ATF Phoenix Group VII who oversaw operation Fast and Furious, was an officer of the United States of America on the date of incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to 99 New York Avenue, NE, Washington, DC 20226.

22. Defendant Lanny Breuer, former Assistant Attorney General, was an officer of the United States of America on the date of incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002, and by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

23. Defendant Luis Alvarez, formerly served as Assistant Director for the U.S. Immigration and Customs Enforcement Homeland Security Investigations Office of International Affairs. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW,

Washington, DC 20530-0001; by sending a copy of the summons and of the complaint by registered or certified mail to the Department of Homeland Security, at Secretary Janet Napolitano, Department of Homeland Security, U.S. Department of Homeland Security, Washington, DC 20528; and by sending a copy of the summons and of the complaint by registered or certified mail to Luis Alvarez at Western Union, 12500 East Belford Avenue, Englewood, Colorado 80112.

24.     Defendant Juan Gelista, OIA U.S. Immigrations and Customs Enforcement Supervisor, was an employee of the United States of American on the date if incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to Department of Homeland Security, U.S. Department of Homeland Security, Washington, DC 20528.

25.     Defendant Jere T. Miles, was an employee of the United States on the date of incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to 300 North Los Angeles Street, Los Angeles, California 90012.

26. Defendant Anthony Salisbury, was an employee of the United States on the date of incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to 1222 Spruce Street Room 1.100 St. Louis, Mo 63103-2815.

27. Defendant Raul O. Aguilar, U.S. Immigrations and Customs Enforcement Supervisor, was an employee of the United States of America on the date of incident. Defendant may be served with process by serving the U.S. Attorney for the Southern District of Texas, Mr. Kenneth Magidson, at 1000 Louisiana, suite 2300, Houston, Texas 77002; by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001; and by sending a copy of the summons and of the complaint by registered or certified mail to:

i.    The U.S. Embassy in Argentina, Av. Colombia 4300 (C1425GMN) Buenos Aires, Argentina;

ii.    Department of Homeland Security, U.S. Department of Homeland Security, Washington, DC 20528; and

iii.     U.S. Department of State, 2201 C St NW, Washington, DC 20520.

28. Defendants John and/or Jane Doe(s) are fictitiously-named defendants whose true identities are presently unknown to Plaintiffs. Plaintiffs will amend this complaint when John and/or Jane Doe(s)'s true name(s) become known.

## II.    JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

29.     This Court has jurisdiction over Plaintiffs' Bivens and FTCA claims pursuant to U.S.C. Const. art. III, § 2, cl. 1, 28 U.S.C. § 1331, and 28 U.S.C. § 1346(b)(1).  The Court has jurisdiction over Plaintiffs' FOIA action under 5 U.S.C. § 552(a)(4)(B).  The Court has jurisdiction over Plaintiffs' remaining claims under 28 U.S.C. § 1367.

30.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) and (e)(1).

31.     Pursuant to 28 U.S.C. § 2675(a) the claim set forth herein was presented to the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), and the U.S. Immigration and Customs Enforcement ("ICE") on or about June 14, 2012.

32.     ICE was designated as the lead agency to adjudicate the claims and was authorized by the FBI and ATF to adjudicate the tort claims made against those agencies as well.  On or about January 7, 2013, ICE denied all tort claims made by Plaintiffs against ICE, FBI, and ATF.

33.     All conditions precedent to a Federal Tort Claims Act have been met.

## III.    FACTUAL BACKGROUND

### A.    *Avila/Zapata Incident*

34.     A violent drug war has besieged Mexico for several years in which a countless number of people have perished. Drug trafficking organizations (DTOs) have been and may continue to be supplied military-grade assault rifles and other high-powered firearms such as AK-47 variants, M-16 variants, and 50-caliber sniper rifles by gun dealers located in the United States.  Millions of dollars have been spent by DTOs to arm themselves using straw purchasers in the U.S., who purchase the firearms from gun dealers on behalf of DTOs and smuggle them to

Mexico. Thousands have died on account of these illegal sales, including ICE Special Agent Jaime J. Zapata.

35. On or about August 20, 2010, Defendant **JJ's Pawn**, illegally sold ten (10) AK-47 variant WASR-10 assault rifles to straw purchaser Defendant **Robert Riendfliesh** and earlier that summer, on or about May 26, 2010, had illegally sold ten (10) AK-47 variant WASR-10 assault rifles to Defendant **Blandon Derrick Shaffer**, a notorious straw buyer under ATF investigation. **JJ's Pawn** noted that **Riendfliesh** had acquired additional firearms from their business. Defendant **Manuel Barba**, a person prohibited from possessing firearms, directed **Riendfliesh** and **Shaffer** to a particular FFL, **JJ's Pawn**, in order to obtain numerous assault rifles. **Barba** illegally exported these firearms supplied by Defendant **JJ's Pawn** to a dangerous criminal organization in Mexico.

36. On or about October 10, 2010, Defendant **Off-Duty Armory** illegally sold the AK-47 variant Draco handgun to a straw purchaser and weapons trafficker, Defendant **Otilio Osorio**, at a gun show in Fort Worth, Texas. **Otilio Osorio**, **Ranferi Osorio**, and **Kelvin Morrison** worked in conjunction with each other to obtain and illegally export firearms, including the Draco supplied by **Off-Duty Armory** to a dangerous criminal organization in Mexico. The Osorio brothers and Morrison had been under investigation and suspected of this illegal activity dating back to the Summer of 2010.

37. On February 14, 2011, Defendants **Alvarez**, **Miles, Salisbury, Gelista**, and **Aguilar** (hereinafter "**Mexico Supervisors**") instructed Avila and Zapata to drive down a stretch of Mexico Highway 57, which was known to be patrolled and controlled by a dangerous criminal organization to pick up equipment for an unrelated case. Moreover, on or about January 18, 2011, a Security Notice had been sent to all Embassy Employees indicating a travel restriction

for all employees. The Notice specifically states: "Do not travel through these prohibited areas, it is not worth the risk and it violates COM policy." Furthermore, in an email dated February 14, 2011 – with direct reference to the packages Avila and Zapata were sent to retrieve – DHS was informed that several scrimmages between federal forces and DTO's (Drug Trafficking Organizations) had occurred and sending the package via "pouch" could be utilized.

38.     Despite opposition by Avila and despite having full knowledge of the dangers present with the package pick-up, Mexico Supervisors instructed Avila and Zapata to proceed with the directive. Furthermore, Avila and Zapata were instructed to make the trip unescorted; in a vehicle that had an inoperable GPS and PA system; and in an otherwise improperly maintained vehicle.

39.     On February 15, 2011, the son of Plaintiffs Mary and Amador Zapata, U.S. Immigration and Customs Enforcement (ICE) Special Agent Jaime J. Zapata, was murdered and Special Agent Victor Avila, Jr. was shot multiple times along Mexico Highway 57 near Santa Maria del Rio, in the northern state of San Luis Potosi. Several gunmen of a dangerous criminal organization attacked ICE Agents Zapata and Victor Avila, Jr., utilizing firearms originating from gun dealers in the United States. At least three (3) firearms were recovered by Mexican authorities investigating the attack and given to the U.S. government. The firearms used were found to have originated in the United States. ATF concluded that these firearms were in fact used to shoot Agents Zapata and Avila. Specifically, the AK-47 variant WASR-10 assault rifle bearing serial no. 1981MF8477 and purchased by Defendant **Rienfliesh** as described above and the AK-47 variant Draco handgun bearing serial no. DC-2777-10 purchased by **Otilio Osorio** as described above were those identified.

40.     During the attack described above, Zapata and Avila were driving an Armored Chevrolet Suburban rebuilt and outfitted by Defendant **BAE Systems and/or Unknown Vehicle Manufacturer/Outfitter**.  The assailants tactically blocked the vehicle from continuing down this dangerous highway and surrounded the agents.  Zapata placed the vehicle into park, which automatically unlocked the doors to the armored vehicle.  Subsequently, after panic stricken moments, the attackers were able to breach the vehicle's armored capabilities and due to the faulty safety features opened fire on the agents.  Jaime J. Zapata was killed as a result of the incident and Victor Avila, Jr. was severely wounded and hospitalized.

### B.     Government Conspiracy/Cover-Up

41.     In 2006, The United States government began Project Gunrunner, which began as ATF's comprehensive strategy to combat firearm-related violence perpetrated by the drug cartels along the southwest border.  Collectively, the United States government along with Defendants **Voth, Melson, Newell, Tarango, Breuer, and John and/or Jane Doe(s) directly responsible for the decisions made with regards to gunrunning activities** (collectively hereinafter called "**Gunrunner Defendants**"), developed a strategy for combating the Mexican cartels.  Gunrunner Defendants sought to develop a single-coherent strategic plan that would be executed through the mechanism of prosecutor-led, multi-agency task forces, using the Organized Crime Drug Enforcement Task Forces (OCDETF) Program to assist in coordinating the platform.

42.     When Mexican authorities arrested Zapata and Avila's shooters, six firearms were recovered.  Case Number 701530-11-0012 was assigned to a Firearms Trace Summary for the incident.  One Trace Report is for a Draco (AK variant) pistol, which was later identified as the murder weapon purchased by Otilio Osorio, as described above.

43. Case number 781015-11-0009 included a S.I.R. dated February 28, 2011. It acknowledges that Otilio Osorio purchased the Draco that was used in the murder of Zapata and shooting of Avila. It details the ATF execution of a search warrant and arrest of Otilio Osorio and his brother Ranferi Osorio on weapons violations. Case number 781015-11-0009 lists Otilio Osorio, Ranferi Osorio, Eder Talamantes and Kelven Morrison as Suspects/Defendants.

44. Case number 781015-11-0009 indicates that the investigation was opened on or about November 8, 2010, and lists a single Report of Investigation (ROI) describing a joint ATF and DEA operation of a controlled delivery of forty AK rifles to an ATF CI on November 9, 2010. However, the time stamp on the ROI was not authored/generated until February 25, 2011. Despite a policy of having ROI's completed within five days of the event, ATF hadn't done so until three months and seventeen days had lapsed. Moreover, the other information in the case file lists Personal History/TECS input forms for Ranferi Otilio and Talamentes dated February 25, 2011. Otilio Osorio, Ranferi Osorio, Talamentes, and Kelvin Morrison were also included in the nineteen source files and show an upload date of March 1, 2011. An *eTrace* check was conducted for the above individuals. An *eTrace* allows law enforcement agencies to identify trafficking trends of drug trafficking organizations and other criminal organization funneling guns into Mexico and from the United States. An *eTrace* also assists in developing investigative leads in order to stop firearms traffickers and straw purchasers before they cross the border. The *eTrace* for the above individuals reveals previous Multiple Sale Summary (MSS) reports commencing in late July of 2010 and continuing through November of 2010. An MSS is used to verify gun dealers' records, to detect suspicious activity, and to generate investigative leads. An MSS is generated whenever a licensee sells or otherwise disposes of two or more rifles within

any five consecutive business days with the following characteristics: a) semi-automatic; b) a caliber greater than .22; and c) the ability to accept a detachable magazine.

45. In conjunction with the above, ATF Las Cruces Satellite Office (Phoenix Field Division) had been conducting its own gun trafficking investigation identified as Case Number 785096-10-0035, which was opened on or about July 28, 2010. On or about July 29, 2010, ATF agents observed firearms being trafficked to Mexico and failed to maintain surveillance. A few days later, on August 7, 2010, the suspect vehicle from the July 29 observation was stopped while in route to Eagle Pass, Texas with twenty-three AK variant firearms with obliterated serial numbers. Several serial numbers were restored on the firearms and they were traced back to the purchasers, namely, Ranferi Osorio on July 24th and 30th of 2010, and Kelvin Morrison on July 30, 2010. There was no further activity shown on the file, except for an entry on March 2, 2011 indicating a file review by Agent Newell.

46. On or about November 8, 2010, several months after Osorio and Morrison had been stopped and presumably flagged, ATF Dallas Group III opened Case Number 782080-11-0011. The file contained a single ROI describing a joint ATF and DEA operation involving a controlled delivery of forty AK rifles to an ATF CI on November 9, 2010, and another stamped on November 10, 2010. Presumably, the ROI in this case number reflects the same ROI involving a "controlled delivery" as described in the 781015-11-0009 ROI dated February 25, 2011. Despite the identical incident, Case Number 782080-11-0011 does not list Talamentes or Morrison as suspects/defendants.

47. As early as July 29, 2010 and then verified through the September 17, 2010, Firearms Trace Summaries, ATF had probable cause to believe that the Osorio brothers and Morrison were straw purchasers. ATF had an opportunity and probable cause to arrest the

Osorio brothers and Morrison in November of 2010 but failed to do so. Specific failures need to be addressed and there are several unanswered questions.

48. On or about July 26, 2011, Congress issued a Joint Staff Report regarding DOJ's Operation Fast and Furious. Congress addressed ATF's and DOJ's failure to share crucial details of Operation Fast and Furious with either their own employees stationed in Mexico or representatives of the Mexican government. The high-risk tactics of cessation of surveillance, gunwalking, and non-interdiction of weapons that ATF used in Operation Fast and Furious went against the core of ATF's mission, as well as the training and field experience of its agents. These inherent flaws of Fast and Furious made its tragic consequences inevitable.

### IV. DEFENDANT – THE UNITED STATES – FEDERAL TORT CLAIMS ACT

49. Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

50. The following claims are brought by Plaintiffs against Defendant, the United States of America, for action undertaken by the Gunrunner Defendants, among others, and the United States of America, all acting within the scope of their employment.

### A. *Negligence*

51. Plaintiff, Victor Avila, Jr., in his individual capacity, brings this claim against Defendant, the United States of America.

52. Plaintiff Mary M. Zapata, brings this claim in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent, and for all damages to which the Estate is entitled under the Texas Survival Statute.

53.     Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim in their individual and personal capacities pursuant to the Texas Wrongful Death Act.

54.     Defendant, the United States, owed a legal duty to Plaintiffs.  Defendant's duties include, but are not limited to: 1) the use of ordinary care in providing a reasonably safe workplace (improper supervision; improper inspection, maintenance, and use of an unsafe vehicle; and gunwalking knowledge); 2) use of ordinary care in establishing rules and regulations for an employee's safety; 3) use of ordinary care in warning employees of the hazards of employment that are not commonly known or appreciated by employees; 4) use of ordinary care in furnishing reasonably safe machinery/vehicles; 5) use of ordinary care in supervising an employee's activities; 6) use of reasonable care to prevent an employee from actuating an unreasonable risk of harm to others; 7) duty to prevent injury to others if it reasonably appears or should appear that in the exercise of their lawful rights others may be injured by a dangerous condition that was created by the Defendant; 8) exercise reasonable care to avoid a foreseeable risk of injury to others; 9) duty to take affirmative action to control or avoid increasing the danger from a condition that has been at least partially created by Defendant's conduct; 10) use of ordinary care in aiding or protecting others from peril at least partially created by Defendant; and 11) use of ordinary care in not placing others in harm's way of foreseeable criminal activity.

55.     Defendant breached the above described duties by failing to abide by policies regarding arms export regulations; safe travel; proper oversight of employees; issuing defective vehicles; gunwalking; failing to disclose known dangers involving gunwalking; and Defendant's continued violations of the above actions.

56. Defendant's breach of duty proximately caused injury to Plaintiffs, which resulted in the damages specified below.

**B.     *Negligence Per Se***

57. Plaintiff, Victor Avila, Jr., in his individual capacity, brings this claim against Defendant, the United States of America.

58. Plaintiff Mary M. Zapata, brings this claim in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent, and for all damages to which the Estate is entitled under the Texas Survival Statute.

59. Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim in their individual and personal capacities pursuant to the Texas Wrongful Death Act.

60. In addition to the other counts, Defendant's negligence described above violated federal statutes and regulations including, but not limited to, provisions of the Gun Control Act, 18 U.S.C. § 922, *et seq.*, 18 U.S.C. § 924, *et seq.*, and FFL regulations prohibiting the straw sale of firearms.

61. These statutes, other firearm laws and regulations, and other public safety laws and regulations violated by Defendant, are designed to protect the safety of the general public and law enforcement officers from the substantial risk of serious physical harm posed by illegal straw sales and firearms trafficking.

62. Defendant's violation of these statutes and federal firearm laws and regulations constitute negligence per se. Defendant, having knowledge of the dangers posed by the violation of the statutes, proceeded with the violation of public safety statutes and federal laws and

regulations in conscious disregard for the lives and safety of their agents, including Agents Zapata and Avila.

63. As a direct and proximate result of the Defendant's negligence per se, Plaintiffs suffered damages as described below.

### C. *Intentional Infliction of Emotional Distress*

64. Plaintiffs Mary and Amador Zapata and Victor Avila bring this claim against Defendant, the United States, in their respective capacities.

65. Defendant placed weapons in the hands of a dangerous criminal organization and failed to warn, thereby placing Agents Zapata and Avila in harm's way. Defendant's conduct contributed to, increased, and changed the risk which would have otherwise not existed. The conduct was so extreme as to exceed all bounds of that usually tolerated in a civilized community. Furthermore, the United States has conducted an ongoing cover-up to deprive Avila and the Zapata family of the answers they rightfully deserve, which include:

a. What written policies and protocols were in force in Mexico and disregarded?

b. What attempts have been made to reconstruct the sequences of events that led to the murder of Jaime Zapata and the injuries to Victor Avila?

c. What information, by way of photographs, statements, videos, or other documentary and tangible evidence has been obtained, and what reasons have prevented Defendant from disclosing the information?

d. What are the details of the vehicle Avila and Zapata were driving, and has it been inspected or were there concerns regarding the safety of the vehicle?

e. What was the specific purpose of the mission Zapata and Avila were sent on, and why was the mission so urgent despite knowledge of the dangers it posed?

f. Why were Zapata and Avila unescorted across a highway that was known to be dangerous?

g. What concrete steps are being taken to ensure that another senseless tragedy like this will not happen again?

h. What manner of surveillance was Defendant conducting on the gunwalking activities?

i. Who authorized the gunwalking? Where is/are he/she/they now?

j. Are Mr. and Mrs. Zapata's other sons (who are active ICE agents), Victor Avila, and other federal agents and innocent individuals in danger due to the outstanding issues that have yet to be resolved?

66. The United States has continued to allow our agents to be put in harm's way, and it continues each and every day to do so until its actions, taken as a whole, are put to an end and the United States rectifies the wrongs it caused and continues to cause.

67. The United States has and continues to cause damages with its blatant refusal to answer Avila's and the Zapata family's concerns and questions regarding the attack, the firearms allowed to enter into Mexico, and the United States' involvement, which represents a continuing violation of common law.

68. The continued conduct of the United States has culminated in multiple wrongful acts, failures, and decisions such that the collected malfeasance has continued. No single incident in this continuous chain of tortious activity can fairly or realistically be identified as the cause of the significant harm, such that Avila's and the Zapata family's causes of action arise not from an individually identifiable wrong, but rather from a series of acts collectively considered.

69. The last act of this strain of outrageous and tortious conduct – the cover-up – continues to cause damages to Avila and the Zapata family.

70. Defendant's conduct, to this day, proximately causes severe emotional distress to Avila and the Zapata family. Plaintiffs are and will continue to suffer severe emotional distress, mental anguish, loss of society, and strain directly relating to their inability to understand the death of Jaime Zapata and the incident surrounding the injuries of Victor Avila. Said damages are a direct consequence of the United States' 1) unwillingness to display the type of sympathy and candidness that would aid any family in seeking answers to a tragic death and serious injury; 2) lack of cooperation with Plaintiffs' need for closure; 3) complete lack of remorse or attempt to remedy the situation; and 4) continued unabashed manner in which it has held itself in relation to the incident.

### D. Public Nuisance

71. Plaintiff, Victor Avila, Jr., brings this claim against Defendant, the United States of America in his individual capacity.

72. Plaintiff Mary M. Zapata, brings this claim in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

73. Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim in their individual and personal capacities pursuant to the Texas Wrongful Death Act.

74. Defendant, the United States, acted with reckless disregard and created a highly unreasonable risk of harm to Plaintiffs, other federal agents, and the rest of the public. It did so

with a conscious indifference to the rights and safety of others. The United States' negligent gunwalking practices caused Plaintiffs' injuries and have created an unreasonable threat to the public's health and safety, thereby constituting a public nuisance.

75. The United States' negligent behavior has interfered with the right of the people to enjoy public spaces without undue risk of injury to themselves and to their families. The harm caused is ongoing and widely publicized and a matter of common knowledge as well as public record.

76. The United States, through means within their control, could have prevented firearms from flowing into the hands of unauthorized and irresponsible people, thereby preventing the harm they caused to Plaintiffs. The long-term, cumulative effect has created an environment in which criminals have easy access to guns, thereby endangering the health and safety of the public. Moreover, the created environment has caused and continues to cause damages to the public in general by allowing criminal organizations to freely exchange firearms without fear of repercussions.

77. Plaintiffs have suffered and continue to suffer severe and special injuries as a result of the nuisance, which is distinct from and more severe than that suffered by the general public, and resulted in the damages described below.

## V. DEFENDANT – GUNRUNNER DEFENDANTS

78. Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

### A. *Bivens – Fifth Amendment*

79. Plaintiff, Victor Avila, Jr., brings this claim against Defendants, Kenneth Melson, William D. Newell, Hector Tarango, David Voth, Lanny Breuer, and the John and/or Jane

Doe(s) directly responsible for the decisions made with regard to gunrunning activities (hereinafter "Gunrunner Defendants") in his individual capacity.

80.     Plaintiff, Mary M. Zapata, brings this claim against Gunrunner Defendants in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

81.     This cause of action is brought by Plaintiffs against Gunrunner Defendants for deprivation of constitutional rights within the meaning of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("Bivens").

82.     The Constitution, specifically the Due Process Clause of the Fifth Amendment, protects citizens' liberty interest in their own bodily security from violation by federal government action.

83.     Gunrunner Defendants, each individually, specifically created an additional danger by utilizing high-risk tactics by the cessation of surveillance, gunwalking, and non-interdiction of weapons that Gunrunner Defendants used in Operation Fast and Furious and other similarly created gun walking operations that went against the core of ATF's and Gunrunner Defendants' mission, as well as their training and field experience as agents.  These inherent flaws of gunwalking made these tragic consequences inevitable.

84.     These additional dangers created by Gunrunner Defendants caused Zapata's death and Avila's injuries when the dangerous criminal organization operatives, using weapons obtained due to gunwalking operations and Gunrunner Defendants' disregard for policies and procedures, attacked Zapata and Avila.

85. Gunrunner Defendants, each individually, through acts and omissions, intended to deny the constitutional rights of Plaintiffs, and acted with intentional and/or callous disregard or deliberate indifference to those rights. The above-described acts of Gunrunner Defendants, all charged with upholding the Constitution and not unlawfully causing harm to Plaintiffs, were not intended to be exempt from liability for these actions. Federal employees are personally liable for constitutional deprivation through their 1) direct participation; 2) failure to remedy wrongs after learning about them; 3) creation of policy or custom under which a violation of constitutional practices occur; or 4) gross negligence in managing subordinates who cause these violations.

86. The injuries complained of were a foreseeable consequence of Gunrunner Defendants' affirmative actions described herein.

87. Gunrunner Defendants were aware that the death and serious injury of American agents was likely to occur as a consequence of their actions, but proceeded with reckless indifference to the consequences of the danger they created. Gunrunner Defendants were aware that these agents were particularly likely to suffer physical harm or death as a result of their gunwalking policies and other actions.

88. Gunrunner Defendants are not entitled to qualified immunity. The conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

89. Gunrunner Defendants proximately and actually caused harm to Plaintiffs as described below. Gunrunner Defendants' conduct rises to the level of gross misconduct, being that there was willful, wanton, and reckless disregarded for the rights and safety of Plaintiffs. As such, Plaintiffs are entitled to an award of punitive damages against Gunrunner Defendants.

**B.** **Bivens – First and Fifth Amendment**

90. Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim against Gunrunner Defendants in their individual and personal capacities pursuant to the Texas Wrongful Death Act.

91. This cause of action is brought by Plaintiffs against Gunrunner Defendants for deprivation of Plaintiffs' constitutional right to a continuing relationship with their son, Jaime Zapata, under the Due Process Clause of the Fifth Amendment and the Free Association Clause of the First Amendment to the United States Constitution pursuant to *Bivens.*

92. The Constitution, specifically the First and Fifth Amendments, protects citizens' liberty interest in familial companionship from violation by federal government action.

93. Gunrunner Defendants, by way of the actions described above, proximately and actually caused Plaintiffs' injuries as described below. Gunrunner Defendants' conduct rises to the level of gross misconduct, being that there was willful, wanton, and reckless disregard for the rights and safety of Plaintiffs. As such, Plaintiffs are entitled to an award of punitive damages against Gunrunner Defendants.

**C.** **Civil Conspiracy – Bivens – First and Fifth Amendment**

94. Plaintiff, Victor Avila, Jr., brings this claim against Gunrunner Defendants in his individual capacity.

95. Plaintiff Mary M. Zapata, brings this claim against Gunrunner Defendants in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

96. Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim against the Gunrunner Defendants in their individual and personal capacities pursuant to the Texas Wrongful Death Act.

97. Pleading further and in the alternative, Gunrunner Defendants entered into a civil conspiracy with each other and agreed to use unconstitutional and unlawful means, through the actions described above, to accomplish an unlawful and unconstitutional purpose to Plaintiffs' detriment.

98. Plaintiffs were and continue to be damaged as a direct and proximate result of the civil conspiracy between all Gunrunner Defendants.

99. As a result of their conspiracy, Plaintiffs have been damaged in an amount exceeding the jurisdictional limits of this Court as described below. Plaintiffs seek recovery of these damages from Gunrunner Defendants, jointly and severally.

## VI. DEFENDANT – MEXICO SUPERVISORS

100. Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes as if set forth herein verbatim.

### A. Bivens – Fifth Amendment

101. Plaintiff, Victor Avila, Jr., brings this claim against Defendants, Luis Alvarez, Juan Gelista, Jere T. Miles, Anthony Salisbury, and Raul O. Aguilar (hereinafter "Mexico Supervisors") in his individual capacity.

102. Plaintiff, Mary M. Zapata, brings this claim against Mexico Supervisors in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his

death; for reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

103. This cause of action is brought by Plaintiffs against Mexico Supervisors for deprivation of constitutional rights within the meaning of *Bivens*.

104. The Constitution, specifically the Due Process Clause of the Fifth Amendment, protects citizens' liberty interest in their own bodily security from violation by federal government action.

105. Mexico Supervisors, each individually, specifically created an additional danger by 1) ignoring written directives or failing to use safer alternative methods specifically designed to prevent the injuries sustained in this incident; 2) sending Avila and Zapata unescorted in an area that was restricted from travel; 3) issuing a vehicle that had inoperable GPS, PA, and other safety systems; and 4) failing to maintain equipment/vehicles issued to the agents. These actions contributed to the damages sustained by Plaintiffs.

106. These additional dangers created by Mexico Supervisors caused Zapata's death and Avila's injuries when the dangerous criminal organization operatives attacked Zapata and Avila.

107. Mexico Supervisors, each individually, through acts and omissions intended to deny the constitutional rights of Plaintiffs, and acted with intentional and/or callous disregard or deliberate indifference to those rights. The above-described acts of Mexico Supervisors, all charged with upholding the Constitution and not unlawfully causing harm to Plaintiffs, were not intended to be exempt from liability for these actions. Federal employees are personally liable for constitutional deprivation through their 1) direct participation; 2) failure to remedy wrongs after learning about them; 3) creation of a policy or custom under which a violation of

constitutional practices occur; 4) or gross negligence in managing subordinates who cause these violations.

108. The injuries complained of were a foreseeable consequence of Mexico Supervisors' affirmative actions described herein.

109. Mexico Supervisors were aware that death and serious injury of American agents was likely to occur as a consequence of their actions, but proceeded with reckless indifference to the consequences of the danger they created. Mexico Supervisors were aware that these agents were particularly likely to suffer physical harm or death as a result of their policies and other actions.

110. Mexico Supervisors are not entitled to qualified immunity. The conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

111. Mexico Supervisors proximately and actually caused harm to Plaintiffs as described below. Mexico Supervisors' conduct rises to the level of gross misconduct, being that there was willful, wanton, and reckless disregarded for the rights and safety of Plaintiffs. As such, Plaintiffs are entitled to an award of punitive damages against the Mexico Supervisors.

### B. Bivens – First and Fifth Amendment

112. Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim against Mexico Supervisors in their individual and personal capacities pursuant to the Texas Wrongful Death Act.

113. This cause of action is brought by Plaintiffs against Mexico Supervisors for deprivation of Plaintiffs' constitutional right to a continuing relationship with their son, Jaime

Zapata, under the Due Process Clause of the Fifth Amendment and the Free Association Clause of the First Amendment to the United States Constitution pursuant to *Bivens.*

114. The Constitution, specifically the First and Fifth Amendments, protects citizens' liberty interest in familial companionship from violation by federal government action.

115. Mexico Supervisors, by way of the actions described above, proximately and actually caused Plaintiffs injuries as described below. Mexico Supervisors' conduct rises to the level of gross misconduct, being that there was willful, wanton, and reckless disregard for the rights and safety of Plaintiffs. As such, Plaintiffs are entitled to an award of punitive damages against Mexico Supervisors.

## VII. DEFENDANT – FFLs

116. Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes as if set forth herein verbatim.

117. Plaintiff, Victor Avila, Jr., brings these claims against Defendants, JJ's Pawn, Off-Duty Armory, and an Unknown FFL Dealer (hereinafter "Defendant FFLs") in his individual capacity.

118. Plaintiff Mary M. Zapata, brings these claims against Defendant FFLs in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

119. Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring these claims against the Defendant FFLs in their individual and personal capacities pursuant to the Texas Wrongful Death Act.

### A. Negligence/Gross Negligence

120. Defendant FFLs owed Plaintiffs, and all members of the general public a duty not to create such a risk of harm as they did by selling firearms to straw purchasers. Defendant FFLs also had an independent legal obligation to not sell firearms to straw purchasers. Generally, the intended and actual recipients of straw sale firearms, many who by law cannot purchase firearms themselves, pose a grave danger to public safety with the firearms in their possession. Defendant FFLs ignored the danger posed to the public and to Plaintiffs when they illegally sold firearms that were foreseeably destined for criminal use.

121. There is a common law duty to the general public to refrain from creating a risk of harm as well as to act reasonably and responsibly in conducting business affairs in order to minimize the risk of foreseeable injury. Defendant FFLs breached their common law duties, and their negligence substantially enhanced the risk that the weapons would be acquired by prohibited purchasers for criminal purposes. This risk included the Osorio brothers, Barba, and other named Defendants and John and/or Jane Doe(s) obtaining the weapons and utilizing them to assist a dangerous criminal organization with attacking Zapata and Avila.

122. Defendant FFLs negligently chose to sell and distribute firearms in a manner that circumvents established laws and policies of the United States and the State of Texas laws that are intended to keep guns out of the hands of individuals such as the named Defendants.

123. Defendant FFLs failed to use reasonable care in their sales and business practices, including, but not limited to their failure to 1) properly inventory and implement tracking programs; 2) mandate employee training covering unlawful sales concerning trafficking and identification of straw purchasers; 3) red flag repeat and large quantity sales; and 4) take further preventative measures in conjunction with law enforcement officials to trace these weapons.

124. Defendant FFLs were aware of, or should have been aware of, false statements made by the straw buyers, which were made in order to give the appearance of a legal sale. All of these illegal firearm purchases occurred under extremely suspicious circumstances. But for Defendant FFLs' illegal sale of the firearms used to shoot Agents Zapata and Avila, the injuries complained of would not have occurred.

125. Defendant FFLs ignored their legal obligations and proceeded with the illegal sale of the firearms used against Zapata and Avila to the straw purchasers. Specifically, JJ's Pawn sold a WASR-10, bearing serial no. 1981MF8477, to Riendfliesh and Off-Duty Armory sold a Draco, bearing serial no. DC-2777-10, to Defendant Osorio. Defendant FFLs realized a profit from the sale and benefited from their negligent activities. As discussed above, the trace report for the third weapon – which would implicate Unknown FFL Dealer – has not been disclosed. The firearms identified were used in the murder of Agent Zapata and the shooting of Agent Avila.

126. JJ's Pawn knew or should have known that the large quantities of AK-47 variant firearms being sold to Riendfliesh and Shaffer were not for recreational or personal use, but rather for illicit use by those legally unable to purchase firearms themselves, such as the cartels, which constitutes a violation of Federal and Texas law.

127. Off-Duty Armory knew or should have known that the AK-47 variant firearms sold to Osorio were straw purchases and the sale would make its way to the cartels or other dangerous organizations, which constituted a violation of Federal and Texas law. The firearm used to kill Zapata and wound Avila purchased from Off-Duty Armory was utilized less than a year after purchase.

128.     Defendant FFLs knew or should have known that the sale of the above-described firearms to straw purchasers constituted a violation of the laws governing FFL dealers and posed a grave danger to the law enforcement community.   Further, said sales were illegal and would constitute a substantial risk of serious physical harm to others.

129.     Defendant FFLs' breach of duty proximately caused injury to Plaintiffs, which resulted in the damages described below.

130.     Plaintiffs' injuries resulted from Defendant FFLs' gross negligence, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

### B.     Negligence Per Se

131.     Defendant FFLs' negligence described above violated federal statutes and regulations including, but not limited to, provisions of the Gun Control Act, 18 U.S.C. § 922, *et seq*., and 18 U.S.C. § 924, *et seq*., FFL regulations prohibiting the straw sale of firearms.  These statutes, other firearm laws and regulations, and other public safety laws and regulations violated by Defendant FFLs, are designed to protect the safety of the general public and law enforcement officers from the substantial risk of serious physical harm posed by illegal straw sales and firearms trafficking.

132.     Defendant FFLs' violation of these statutes and federal firearm laws and regulation constitute negligence per se. Defendant FFLs proceeded with violating public safety statutes and federal laws and regulations in order to profit from these illegal sales.

133.     As a direct and proximate result of Defendant FFLs' negligence per se, Plaintiffs suffered damages as described below.

### C.     Public Nuisance

134.    In order to maximize profits, Defendants JJ"'s Pawn, Off-Duty Armory, and an Unknown FFL Dealer acted with reckless disregard and created a highly unreasonable risk of harm to Plaintiffs and the rest of the public.  They did so with a conscious indifference to the rights and safety of others. Defendant FFLs' negligent business practices, based upon the facts set out in previous paragraphs, caused Plaintiffs' injuries and have created an unreasonable threat to the public's health and safety, thereby constituting a public nuisance.

135.    Defendant FFLs' negligent behavior, in combination with others, has interfered with the right of the people to enjoy public spaces without undue risk of injury to themselves and to their families.  The harm caused is ongoing and widely publicized and a matter of common knowledge.

136.    Defendant FFLs, through means within their control, could have prevented firearms from flowing into the hands of unauthorized and irresponsible people, thereby preventing the harm they caused to Plaintiffs.  The long-term, cumulative effect has created an environment in which criminals have easy access to guns, thereby endangering the health and safety of the public.

137.    Plaintiffs have suffered and continue to suffer severe and special injuries as a result of the nuisance, which are distinct from and more severe than that suffered by the general public, and has resulted in the damages described below.

### VIII.   DEFENDANT – STRAW PURCHASERS

138.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes as if set forth herein verbatim.

139.    Plaintiff, Victor Avila, Jr., brings this claim against Defendants, Manuel Barba, Otilio Osorio, Ranferi Osorio, Blandon Derrick Shaffer, Kelvin Morrison, Robert Rienfliesh, and

John or Jane Doe(s) straw purchasers (hereinafter "Defendant Straw Purchasers") in his individual capacity.

140. Plaintiff Mary M. Zapata, brings this claim against Defendant Straw Purchasers in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

141. Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim against Defendant Straw Purchasers in their individual and personal capacities pursuant to the Texas Wrongful Death Act

### A. Negligence/Gross Negligence

142. Defendant Straw Purchasers owe a duty to not take actions that would create a substantial risk of serious physical harm to others. Defendant Straw Purchases breached their duty to Plaintiffs.

143. Defendant Straw Purchasers violated their duty to Plaintiffs and the general public by creating a high risk of harm when they provided a dangerous organization with high-powered firearms that they knew would be used in criminal activities. But for Defendant Straw Purchasers having provided these firearms to the criminal enterprises, Zapata and Avila would not have been shot with these weapons.

144. Defendant Straw Purchasers' breach of duty proximately caused injury to Plaintiffs, which resulted in the damages described below.

145.    Plaintiffs' injuries resulted from Defendant Straw Purchasers' gross negligence, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

### IX.    DEFENDANT – BAE/UNKNOWN VEHICLE MANUFACTURER/OUTFITTER

146.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes as if set forth herein verbatim.

147.    Plaintiff, Victor Avila, Jr., brings this claim against Defendant, BAE Systems, Inc. ("BAE") and/or Unknown Vehicle Manufacturer/Outfitter, in his individual capacity.

148.    Plaintiff Mary M. Zapata, brings this claim in her capacity as Administrator of the Estate of Jaime J. Zapata, and is entitled to recover damages on behalf of the Estate for physical pain and mental anguish suffered by Jaime J. Zapata prior to his death; for reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

149.    Plaintiffs, Mary and Amador Zapata, the natural parents of Jaime J. Zapata, bring this claim in their individual and personal capacities pursuant to the Texas Wrongful Death Act

#### A.    *Negligence – Market Defect*

150.    BAE and/or Unknown Vehicle Manufacturer/Outfitter have a duty to warn the user of its product of the dangerous characteristics of the product and/or to instruct on its proper use.  BAE and/or Unknown Vehicle Manufacturer/Outfitter did not provide adequate warnings regarding the auto-unlock feature of its vehicle.   There is a clear risk of harm that is inherent in the product or that may arise from the product's intended or reasonably anticipated use.  BAE and/or Unknown Vehicle Manufacturer/Outfitter had actual knowledge or foreseeablity of the

risk of harm by the product at the time the product was marketed. The absence of a warning renders the product unreasonably dangerous.

151. BAE's and/or Unknown Vehicle Manufacturer/Outfitter's failure to warn was a contributing cause to Plaintiffs'' injuries.

152. BAE's and/or Unknown Vehicle Manufacturer/Outfitter's breach of duty proximately caused injury to the Plaintiffs, which resulted in the damages described below.

### B. Strict Product Liability – Negligent Design

153. BAE and/or Unknown Vehicle Manufacturer/Outfitter owed a legal duty to Plaintiffs to use reasonable care in the design of its outfitted vehicles. BAE and/or Unknown Vehicle Manufacturer/Outfitter negligently designed the vehicles' armored system by failing to permanently disengage the auto-unlock feature, rendering the design defective and contributing to the injuries sustained by Plaintiffs.

154. BAE and/or Unknown Vehicle Manufacturer/Outfitter should be aware of a safer alternative design, that is, a permanently disengaged auto-unlock feature, and failed to implement said design. Considering the intended use of the vehicle, the safer alternative design would have prevented or significantly reduced the risk of injury or death to Plaintiffs without impairing the product's utility. The safer alternative design was economically and technologically feasible at the time the vehicle left the control of BAE and/or Unknown Vehicle Manufacturer/Outfitter.

155. BAE's and/or Unknown Vehicle Manufacturer/Outfitter's acts and omissions contributed to the injuries sustained by Plaintiffs as more specifically described below.

### X. DEFENDANT – DOJ/DHS - FOIA

156. Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes as if set forth herein verbatim.

157. Plaintiffs bring this action under the Freedom of Information Act, 5 U.S.C. § 552, for injunctive and other appropriate relief and seeking the disclosure and release of agency records improperly withheld from Plaintiffs by Defendants DOJ and DHS.

158. Defendant DOJ is a Department of the Executive Branch of the United States Government and includes component entities FBI, DEA, ATF, and the Office of Information Policy (OIP). DOJ is an agency within the meaning of 5 U.S.C. § 552(f).

159. Defendant DHS is a Department of the Executive Branch of the United States Government and includes ICE. DHS is an agency within the meaning of 5 U.S.C. § 552(f).

160. By a letter directed to the U.S. Attorney's Office for the Southern District of Texas, FBI San Antonio Division, U.S. Immigration and Customs Enforcement in Harlingen, Brownsville, and San Antonio dated June 14, 2011, Plaintiffs submitted Freedom of Information Act (FOIA) requests for documentation related to the Zapata and Avila incident, which included specific requests for FBI 302s, DEA 6s, ICE ROIs, ATF documentation, and any investigative reports linked to the incident.

161. By a separate letter each agency denied the requests. DOJ, through the OIP in a letter dated January 20, 2012, denied the appeal for the FBI requested documents. The OIP denied other requests in a letter dated June 6, 2012. The Department of Homeland Security, through ICE, denied the requested documents in a letter dated October 20, 2011.

162. Plaintiffs have exhausted the applicable administrative remedies with respect to their FOIA requests to Defendants DOJ and DHS.

163. DOJ and DHS have wrongfully withheld the requested records from Plaintiffs.

164.     Plaintiffs request that this Court order DOJ and DHS to 1) disclose the requested records in their entireties and make copies available to Plaintiffs; 2) provide for expeditious proceedings in this action; 3) award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and 4) grant such other relief as the Court may deem just and proper.

## XI.     WRONGFUL DEATH CAUSE OF ACTION

165.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

166.     In conjunction with those claims already pleaded, Jaime J. Zapata suffered fatal injuries as a result of multiple 7.62 mm gunshot wounds to his body fired from multiple AK-47 variant firearms.  Agent Zapata's parents, Plaintiffs Mary and Amador Zapata, are entitled to recover damages from Defendants for the loss of companionship, mental anguish, funeral and burial expenses they incurred, loss of support, loss of care and affection, and exemplary damages.  All of the injuries and damages, as herein alleged are in an amount in excess of the Court's minimum jurisdictional limits for which Plaintiffs sue.  Plaintiffs incorporate each and every allegation as set forth herein above and repeat and re-allege such allegations hereinafter with the same force and effect.

## XII.     TEXAS SURVIVAL STATUTE

167.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes as if set forth herein verbatim.

168.     In conjunction with those claims already pleaded, Plaintiff Mary M. Zapata, in her capacity as Administrator of the Estate of Jaime J. Zapata, is entitled to recover damages on behalf of the Estate for the physical pain and mental anguish suffered by Jaime J. Zapata prior to

his death; for the reasonable costs of funeral, burial, and related expenses for the decedent; and for all damages to which the Estate is entitled under the Texas Survival Statute.

## XIII. DAMAGES

169. Plaintiffs re-allege and incorporate by reference the preceding paragraphs for all purposes as if set forth herein verbatim.

170. As a direct and proximate cause of the breaches of Defendants' duties of care, Jaime Zapata was killed and Victor Avila, Jr. was severely wounded by multiple gunshots from the AK-47 variant firearms that the Defendant FFLs illegally sold to the Defendant Straw Purchasers under the direct observation of the Gunrunner Defendants and the United States of America. First and foremost, had Agents Zapata and Avila not been ordered by Mexico Supervisors to be on a dangerous road in direct contradiction to hand written policy and other practices for federal agents and their equipment/vehicles working in Mexico, this situation would not have occurred. Moreover, these firearms would have been ineffective against Agents Zapata and Avila had BAE and/or Unknown Vehicle Manufacturer/Outfitter adequately secured the Armored Chevrolet Suburban with reasonable care and corrected the grave vulnerability and serious flaw of automatically unlocking doors of a vehicle specially built for traversing very dangerous areas, which allowed the gunmen to gain access to the vehicle and shoot the agents by simply opening an unlocked door and breaching the security of a vehicle based upon panic stricken actions. Finally, had many of the above mentioned Defendants prevented the sale or purchase of weapons to be illegally used, this would have eliminated one more factor or contributing cause to this tragic situation.

171.    As a direct and proximate cause of the breaches of Defendants' duties of care, Plaintiffs' Amador and Mary Zapata sustained substantial and permanent injuries as a direct and proximate result of the wrongful death of their son, Jaime Zapata.

172.    Plaintiffs' Amador and Mary Zapata's injuries include, *inter alia*, past and future loss of love, income, affection, companionship, care, protection, and guidance.  They are experiencing disability, pain, anguish, sorrow, mental suffering, extreme stress, shock, and physical illness.

173.    As a direct and proximate cause of the breaches of Defendants' duties of care, Plaintiff Victor Avila, Jr. sustained multiple gunshot wounds causing past and future pain and extreme physical and mental anguish, permanent impairment, and disfigurement.

174.    As a direct and proximate cause of the breaches of Defendants' duties of care, Plaintiffs will suffer for the foreseeable future, if not for the balance of their natural lives.

175.    Plaintiffs request any and all actual, pecuniary, consequential, and special damages both past and future, to which they are entitled.

176.    For all the above reasons, Plaintiffs have suffered losses and damages in a sum that exceeds the minimum jurisdictional limits of the Court and for which Plaintiffs now sue.

177.    The conduct described in the preceding paragraphs was committed in a manner such that Plaintiffs seek exemplary damages in such amount that may be awarded in the discretion of the jury.

### XIV.  JURY DEMAND

178.    Demand is hereby made for a jury to decide all fact issues in this case, and Plaintiffs have tendered the jury fee.

### XV.    CAPACITIES/CONDITIONS PRECEDENT

179. Plaintiffs bring claims against Defendants in all capacities in which they are liable. All conditions precedent necessary to bring this suit have occurred or have been performed.

## XVI. PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that upon final trial, Plaintiffs have and recover from Defendants the following:

A. Economic and noneconomic damages or actual damages and exemplary damages in excess of this Court's minimum jurisdictional limits;

B. Prejudgment interest at the highest legal rate allowed by law;

C. Post-judgment interest on said judgment until paid in full;

D. Court costs;

E. General relief;

F. Any and all other relief entitled to by the Plaintiffs.

Respectfully submitted,

**LAW OFFICE OF BENIGNO (TREY) MARTINEZ, PLLC**
**LAW OFFICE OF TONY MARTINEZ, PC**
1201 E. Van Buren
Brownsville, Texas 78520
(956) 546-7159
(956) 544-0602 (facsimile)

By: /s/ Benigno (Trey) Martinez

**KITTLEMAN, THOMAS & GONZALES, PLLC**
4900-B North 10th Street
McAllen, Texas 78504
(956) 686-8797
(956) 630-5199 (facsimile)

By: /s/ Raymond L. Thomas

**RAD LAW FIRM**
2001 Beach Street, Suite 600

---

Fort Worth, Texas 76103
(817) 543-1990
(817) 543-1319 (facsimile)

By: /s/ Magdalena Villalobos

**ATTORNEYS FOR PLAINTIFFS**