**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **MARIA M. ZAPATA, ET AL.** | § | |
| | § | |
| | § | |
| **V.** | § | **Civil Action No. 13-CV-00022** |
| | § | |
| | § | |
| **UNITED STATES OF AMERICA, ET AL.** | § | |

---

### PLAINTIFFS' BRIEFING PURSUANT TO COURT'S REQUEST

---

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW Mary M. Zapata, Individually and as Administrator of the Estate of Jaime J. Zapata, Amador Zapata, Jr., and Victor Avila, Jr., Plaintiffs in the above-number cause, (hereinafter "Plaintiffs"). Pursuant to the Court's request for same in its Order entered March 10, 2014 [Doc. 128], Plaintiffs file this briefing on certain matters pertaining to their claims under the Federal Tort Claims Act against the United States of America ("the Government").

### I.  Issues Presented

A. With respect to Mary and Amador Zapata's Federal Torts Claim Act ("FTCA") intentional infliction of emotional distress claims based on the United States' alleged cover up:

1. Have Mary and Amador Zapata adequately stated a claim possessing analogous Texas liability for intentional infliction of emotional distress? If so, why or if not, why not?

2. Can a refusal to provide information (as opposed to conveying false information) ever be the basis of intentional infliction of emotional harm claim under Texas law?

B. Concerning Agent Avila's intentional infliction of emotional distress claims based on the alleged cover up and retaliation:

1. Does Agent Avila need to exhaust his administrative remedies prior to filing suit? If so, has he? If not, why not?

2. Is the foreign-country exception applicable to Agent Avila's retaliation claims?

3. Is the Federal Employees Compensation Act bar applicable to Agent Avila's retaliation and emotional distress claims?

**II.    The Zapata family has adequately stated a claim for intentional infliction of emotional distress based on, *inter alia*, the Government's failure to provide information relating to the events that gave rise to Jaime Zapata's death**

To prevail on a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must show that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). An IIED claim is a "gap-filler" tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the plaintiff has no other recognized theory of redress. *Hoffman-La Roche v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). An IIED claim applies where the defendant desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. RESTATEMENT (SECOND) OF TORTS § 46 cmt. i. It also applies where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow. *Id.* It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous. *Zeltwanger*, 144 S.W.3d at 445. But when reasonable minds may differ, it is for the jury, subject to the court's control, to determine whether, in the particular case, the conduct was sufficiently extreme and outrageous to result in liability. *Id.*; RESTATEMENT (SECOND) OF TORTS § 46 cmt. h.

When a parent experiences the death of a child, the parent will naturally and expectedly want to know why and how the child was lost. These are questions that Amador and Mary Zapata have not been able to fully answer for themselves with respect to the death of their child, Jaime Zapata. The Zapatas want to know why and how Jaime came to be shot and killed with a firearm that was originally purchased in the United States by an individual under government surveillance. They want to know whether their government and Jaime's employer, facilitated—and all means by which it may have facilitated—the smuggling of this firearm into Mexico. They want to know the degree to which their government understood that the firearm, through any acts and omissions on its part, would end up in the possession of a Mexican drug cartel—composed

of individuals who posed a significant threat to Jaime's well-being in his capacity as a special agent. The information the Zapatas want to know, as expressed in their complaint, is information the Government is withholding, resulting in the Zapatas having to weather a cloud of uncertainty and suspicion that lingers over Jaime's death.

The Government has, at the very least, acted recklessly in deliberate disregard to the high degree of probability that the Zapatas would experience emotional distress as a result of its withholding of the aforementioned information. *See* RESTATEMENT (SECOND) OF TORTS § 46 cmt. i. The Government has cause to know that the Zapatas would urgently want information that would enable them to understand who shares culpability for their son's death and all the circumstances surrounding his death. The Government also has cause to know that the Zapatas' inability to obtain such an understanding would be emotionally distressing—for it would be emotionally distressing for any parent to be deprived a complete understanding as to why and how a child was lost.

The Fourth Amended Complaint ("FAC") satisfies the requirements to state a claim for intentional infliction of emotional distressed based on the Government's deliberate cover-up of the events leading up to and surrounding the Mexico Mission Incident, its refusal to answer the Zapatas' questions on these issues, and its acts of deception in connection therewith. FAC at ¶ 87-88, 90-93. The live pleadings allege the Government acted with the requisite *mens rea*, by deliberately denying information or presenting inaccurate information, and intentionally or knowingly engaging in an elaborate cover up and deception. FAC at ¶ 57-61; 88, 92. The live pleadings further describe conduct by the Government that was extreme and outrageous, going beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *See e.g.* FAC at ¶ 57-61; 87. Lastly, the pleadings sufficiently allege that the Government's conduct has caused the Zapatas severe emotional distress.

As for whether the withholding of information can constitute extreme and outrageous conduct, Plaintiffs have been unable to locate any Texas case law addressing this point. Nonetheless, the fact that an IIED claim is intended to serve as a "gap-filler" tort supports a determination that extreme and outrageous conduct can take a wide variety of forms, which may include the withholding of information. *See Zeltwanger*, 144 S.W.3d at 447 (explaining that an IIED claim allows recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in an "unusual" manner); *see also Travis v. Irby*, 326 F.3d 644, 648

(5th Cir. 2003) (discussing Rule 12(b)(6) standard in context of fraudulent joinder analysis and stating that ambiguities of state law must be resolved in the plaintiff's favor). In assessing whether withholding information constitutes extreme and outrageous conduct in the context of this case, the Court should find—at a minimum—that reasonable minds can differ as to whether it is extreme and outrageous conduct to withhold information from a parent regarding the circumstances in which the parent's child died. Because reasonable minds can disagree, the question of whether the Government's withholding of information from the Zapatas constitutes extreme and outrageous conduct is one that should go to a jury. *Id.* at 445. Lastly, the Zapatas asserted in their complaint that they have suffered severe emotional distress, and the Government's motion to dismiss has not given the Court cause to doubt this contention. *See Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (recognizing that the standard of review under Rule 12(b)(6) entails resolving every doubt in the complainant's favor).

For all these reasons, the Court should conclude that the Zapatas have adequately stated a claim for intentional infliction of emotional distress based on the Government's failure to provide information relating to the circumstances and events that gave rise to their son's death.

**III. Agent Avila may continue to pursue some of his intentional infliction of emotional distress claims against the Government**

**A. Although Agent Avila may need to exhaust his administrative remedies for retaliation prior to proceeding against the Government on that claim, there are no administrative remedies available for his intentional infliction of emotional distress claim based on the cover-up**

Agent Avila has applied for and is receiving benefits under the Federal Employee Compensation Act ("FECA") for the injuries that he incurred during and as a result of the Mexico Mission Incident.

With respect to the retaliation claims that Agent Avila has against the Government for its treatment of him since the Mexico Mission Incident, Agent Avila has not yet pursued his administrative remedies for such claims. There are a number of deadlines that have recently passed and/or that are swiftly approaching that concern Agent Avila's ability to continue receiving benefits under FECA and concerning whether he will be able to maintain his current employment position. Plaintiff will need to make decisions very soon about what, if any, administrative remedies he should pursue for his treatment by the Government following the

Mexico Mission Incident through the present. Concededly, Plaintiff must exhaust his administrative remedies for his claims of retaliation against the Government prior to pursuing a retaliation claim against the Government before this Court.

However, Plaintiff is not aware of any administrative remedies that are or could be available to compensate for the intentional emotional distress inflicted by the Government through the Government's misrepresentations, deception, and cover up of the events leading up to and surrounding the Mexico Mission Incident. There is no administrative remedy available when the Government lies to an individual, whether a federal employee or not, about how he came to find himself between the crosshairs of a gun essentially supplied to the dangerous cartel by the federal government. Accordingly, since no administrative remedies are available for the intentional infliction of emotional distress that occurred separate and apart from his employment, Agent Avila need not exhaust any administrative remedies before filing suit to recover on such claims.

### B. The foreign-country exception to the FTCA only applies to protect the Government from tort liability for retaliation and other acts that occurred outside the United States

Based on the Court's previous order concerning the foreign-country exception, Agent Avila's claims under the FTCA based on retaliation that took place in Spain are likely barred by the foreign-country exception.[1] However, Plaintiff maintains that the Government should not be permitted to ship someone overseas in order to commit torts against that person with impunity.

Setting aside the Government's conduct against Agent Avila and his family that occurred in Spain, the retaliatory conduct began during the months that Agent Avila spent in Washington D.C. before being assigned to Spain. In addition, since Agent Avila returned from Spain, he has lived in Denver and has continued to suffer retaliatory treatment even to this day. The claims of retaliation by the Government that occurred in the United States are certainly still viable notwithstanding the protection afforded the Government by the foreign-country exception for its conduct in Spain.

---

[1] This does not preclude Agent Avila from recovering administratively for his employer's retaliatory conduct that took place in Spain.

**C. The Federal Employees Compensation Act bar is no applicable to Agent Avila's retaliation and emotional distress claims**

This Court has already determined that Agent Avila's claims against the Government stemming from the Mexico Mission Incident are indeed barred by FECA. However, Agent Avila's claims for retaliation and the emotional distress that he has endured separate and apart from the Mexico Mission Incident are not covered by and, therefore, are not barred by FECA.

FECA provides generally for compensation upon disability or death of employees due to "personal injury." 5 U.S.C. § 8102. The definition of an "injury" is more specifically limited to "injury by accident" or by "a disease proximately caused by the employment." 5 U.S.C. § 8101(5). Courts have observed that the type of injuries covered by FECA does not appear to include claims for discrimination, mental distress, or loss of employment. *DeFord v. Sec'y of Labor*, 700 F.2d 281, 290 (6th Cir. 1983).

The Sixth Circuit in *DeFord*, went on to explain that "[n]either the language of the statute itself nor the policy foundations underlying workmen's compensation acts" supported a conclusion that the intentional discriminatory conduct alleged in that case should be viewed as causing an "injury" subject to FECA coverage. *Id.* "True it is that compensation acts are habitually given a liberal construction in order to effectuate their intended purposes, … but it should also be recognized that "[s]uch a rule of construction is for the benefit of the employee so that liberal coverage under the Act may be provided," … and is not a device to be used for applying the FECA where it has no application or where stretching its application would be unjust." *Id.* (citing *DeSousa v. Panama Canal Co.*, 202 F. Supp. 22, 25 (S.D.N.Y.1962)).

Utilizing similar reasoning, a number of other courts have also held that pure mental anguish claims are not compensated under and not barred by the FECA because such claims are "divorced from any claim of physical injury." *Sheehan v. United States,* 896 F.2d 1168 (9th Cir.1990) (reversing dismissal of an FTCA claim based on negligent infliction of emotional distress). *See also Benton v. United States,* 960 F.2d 19, 21 (5th Cir. 1992) (citing *Sheehan*); *Carroll v Tennessee Valley Authority*, 697 F. Supp. 508 (D. Col. 1988) (intentional infliction of emotional distress claim not barred). The focus of the inquiry is whether the emotional or mental injuries are derived from the physical injury for which the employee was already compensated under the FECA. *See Benton*, 960 F.2d at 21 (citing *Grijalva v. United States*, 781 F.2d 472, 475 (5th Cir. 1986)).

Similarly, the Fifth Circuit has observed that an employee's emotional reaction to an administrative action or personnel matter taken by the Government is not covered under FECA as such matters pertain to procedures and requirements of the employer and do not bear a direct relation to the work required of the employee. *Schwartz v. Occupational Safety & Health Review Com'n,* 58 Fed. Appx. 595 (5th Cir. 2003).

Agent Avila's claims for the mental and emotional distress caused by the Government's deception, retaliatory conduct, and intentional infliction of emotional distress are not derived from the physical injuries that resulted from the Mexico Mission Incident. Rather, these are separate and independent acts against Agent Avila that have caused separate and distinct emotional distress. Therefore, such conduct is not covered by or barred by FECA.

Alternatively, if the Court finds that there is a substantial question as to whether FECA coverage exists for Agent Avila's retaliation and/or claims for intentional infliction of emotional distress, this Court should "deny the motion to dismiss and abate the case until the Secretary of Labor decides whether the claim is covered by FECA." *Smith v. Nicholson*, 516 F. Supp. 2d 832, 839 (S.D. Tex. 2007), *aff'd,* 287 Fed. Appx. 402 (5th Cir. 2008); *see also Jones v. Tennessee Valley Auth.,* 948 F.2d 258, 261 (6th Cir. 1991).

## IV.    Conclusion

In short, Mary and Amador Zapata have stated a claim for intentional infliction of emotional distress against the Government under the FTCA based, in part, on the Government's refusal to provide information.

Agent Avila's intentional infliction of emotional distress claims against the Government based on conduct that occurred in the United States particularly that related to the cover up also remain viable claims under the FTCA. Alternatively, if the Court finds a substantial question exists as to whether FECA applies to some or all of Agent Avila's emotional distress claims, Plaintiffs request that the Court abate this proceeding until the Secretary of Labor determines whether the claim is covered by FECA.

Respectfully submitted,


By:   /s/ Erin A. Hudson
Benigno (Trey) Martinez
State Bar No. 000797011
Federal Bar No. 23945
trey@mbymlaw.com
Tomas F. Tijerina
State Bar No. 24070746
Federal Bar No. 1062166
tomas@mbymlaw.com
Antonio (Tony) Martinez
State Bar No. 13139000
Federal Bar No. 1943
tony@mbmylaw.com
**LAW OFFICE OF BENIGNO (TREY) MARTINEZ, PLLC**
**LAW OFFICE OF TONY MARTINEZ, PC**
1201E. Van Buren
Brownsville, Texas 78520
(956) 546-7159
(956) 544-0602 (facsimile)

Raymond L. Thomas
State Bar No. 19865350
Federal Bar No. 10715
rthomas@ktglawfirm.com
**KITTLEMAN, THOMAS & GONZALES, PLLC**
4900-B North 10th Street
McAllen, Texas 78504
(956) 686-8797
(956) 630-5199 (facsimile)

Magdalena Avila Villalobos
State Bar No. 24029426
Federal Bar No. 1785535
mvillalobos@radlawfirm.com
**RAD LAW FIRM**
2001 Beach Street, Suite 600
Fort Worth, Texas 76103
(817) 543-1990
(817) 543-1319 (facsimile)

Michael Rodriguez
State Bar No. 00791553
Federal Bar No. 18759
Email: mrodriguez@atlashall.com
Erin A. Hudson
State Bar No. 24059978
Federal Bar No. 1101277
Email: ehudson@atlashall.com
Daniel G. Gurwitz
State Bar No. 00787608
Federal Bar No. 16895
Email: dgurwitz@atlashall.com
Charles W. Downing
State Bar No. 24069631
Federal Bar No. 1048595
Email: cdowning@atlashall.com
**ATLAS HALL & RODRIGUEZ, LLP**
50 W. Morrison Rd., Ste. A
Brownsville, Texas 78520
(956) 574-9333 – Ph.
(956) 574-9337 – Fax

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

On April 8, 2014, the undersigned counsel certifies that all counsel of record have been served a copy of the foregoing document in compliance with the Federal Rules of Civil Procedure and via the court's electronic filing system as follows:

Mr. Steven A. Leyh
Mr. Michael Maus
**Leyh, Payne & Mallia, PLLC**
9545 Katy Freeway, Suite 200
Houston, Texas 77024
Telephone:  (713) 785-0881
Facsimile:  (713) 784-0338
Email: sleyh@lpmfirm.com
Email: mmaus@lpmfirm.com

Mr. Edward J. Martin
**U.S. Department of Justice, Civil Division**
1425 New York Ave., NW, Room 8142
Washington, DC 20005
Telephone:  (202) 616-1024
Facsimile: (202) 616-4314
Email: Edward.martin2@usdoj.gov

Mr. Richard Hunt Gateley
Mr. Christopher E Stoy
Mr. Henri J Dussault
**Bracket & Ellis**
100 Main Street
Fort Worth, Texas 76102-3090
Telephone:  (817) 338-1700
Metro:  (817) 429-9181
Facsimile:  (817) 870-2265
Email: rgateley@belaw.com
Email: cstoy@belaw.com
Email: hdussalt@belaw.com

Mr. John Barnaby Skaggs
**Skaggs & Gonzalez, LLP**
710 Laurel
McAllen, Texas 78501
Telephone:  (956) 687-8203
Facsimile:  (956) 630-6570
Email: sgllp@sbcglobal.net

Mr. Luke Matthew Jones
**U.S. Department of Justice**
20 Massachusetts Ave, NW, Room 6126
Washington, DC 20530
Telephone:  (202) 514-3770
Facsimile:  (202) 616-8460
Email: luke.jones@usdoj.gov

Mr. Manuel Barba
**USP Lompoc U.S. Penitentiary**
3901 Klein Blvd.
Lompoc, CA 93436
***VIA REGULAR MAIL***

Bruce D. Campbell
bcampbell@perkinscoie.com
Mack H. Shultz Jr.
mshultz@perkinscoie.com
**PERKINS COI LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000

By:   /s/ Erin A. Hudson